# Matter of Sheldon H. KRONEGOLD, Attorney

File D2007-064

*Decided January 7, 2010*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) Where disciplinary proceedings are based on a final order of suspension or disbarment, the order creates a rebuttable presumption that reciprocal disciplinary sanctions should follow, which can be rebutted only if the attorney demonstrates by clear and convincing evidence that the underlying disciplinary proceeding resulted in a deprivation of due process, that there was an infirmity of proof establishing the misconduct, or that discipline would result in a grave injustice.

(2) In determining whether to impose reciprocal discipline on an attorney who has been suspended or disbarred by a State court, the Board of Immigration Appeals conducts a deferential review of the proceedings that resulted in the initial discipline.

(3) Where the respondent was disbarred in New York, which precludes an attorney from seeking reinstatement for 7 years, and he failed to rebut the presumption that reciprocal discipline should be imposed, his suspension from practice before the Board, the Immigration Courts, and the Department of Homeland Security for 7 years was an appropriate sanction.

FOR RESPONDENT: Pro se

FOR EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, OFFICE OF GENERAL COUNSEL: Scott Anderson, Deputy Disciplinary Counsel

FOR THE DEPARTMENT OF HOMELAND SECURITY: Eileen M. Connolly, Appellate Counsel

BEFORE: Board Panel: HOLMES and HESS, Board Members; KENDALL CLARK, Temporary Board Member.

HOLMES, Board Member:

On February 9, 2009, an Immigration Judge, acting as the Adjudicating Official in this case, indefinitely suspended the respondent from practice before the Board of Immigration Appeals, the Immigration Courts, and the Department of Homeland Security ("DHS"). The respondent has filed a timely

appeal. The Disciplinary Counsel for the Executive Office for Immigration Review ("EOIR"), which initiated this case, argues that the appeal should be dismissed and that the respondent should be suspended from practice for 7 years. We will dismiss the respondent's appeal and suspend him from practice for 7 years.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent was a member of the Bar in New York and New Jersey. On April 25, 2006, the New York Supreme Court's Appellate Division for the Second Judicial Department suspended the respondent from the practice of law for 2 years, commencing on May 26, 2006. The discipline was "based upon two charges including failure to timely file retainer and closing statements with the Office of Court Administration and employing a non-lawyer to solicit retainers to perform legal services." On June 26, 2006, the court authorized the Grievance Committee to institute and prosecute a new disciplinary proceeding against the respondent and a correspondent. On October 20, 2006, the court denied the respondent's motion to reargue the April 25, 2006, order.

On or about October 4, 2006, the respondent entered a Form EOIR-28 (Notice of Entry of Appearance As Attorney or Representative Before the Immigration Court) and represented that he was a member in good standing of the New Jersey State Bar. He failed to divulge the suspension in New York, checking a box indicating that he was not subject to any court order suspending him from the practice of law. In November 2006 the respondent filed a similar notice of appearance in another case.

On October 25, 2006, the respondent submitted an "Affidavit Of Resignation" to the New York court. Concerning the new charges of professional misconduct, the respondent stated, "I hereby acknowledge that I cannot successfully defend myself on the merits" against the charges. The respondent also acknowledged that he was aware that he could not seek reinstatement as an attorney for 7 years. *In re Leonard*, 845 N.Y.S.2d 225, 226 (N.Y. App. Div. 2007) (stating that "an attorney whose name has been stricken from the roll of attorneys may not petition for reinstatement until expiration of seven years from the effective date of disbarment or removal").

On March 6, 2007, the New York court disbarred the respondent. The court considered the respondent's acknowledgment that there were five charges of professional misconduct pending against him, including allegations that he aided a disbarred lawyer in the practice of law. The court also took into account the respondent's statements that he was represented by counsel and that his resignation was freely given and not made under coercion or duress.

On July 24, 2007, the respondent was stricken from the roll of attorneys in the United States District Court for the Southern District of New York. The

court found no reason not to impose discipline reciprocal to that imposed by the State of New York, "specifically in view of [the respondent's] decision not to contest the allegations in state court and in view of the representations he made in resigning therefrom."

On April 8, 2008, the EOIR Disciplinary Counsel petitioned for the respondent's immediate suspension from practice before the Board and the Immigration Courts. The DHS then asked that the respondent be similarly suspended from practicing before that agency. On April 15, 2008, we suspended the respondent from practicing before the Board, the Immigration Courts, and the DHS pending final disposition of this matter.

Reciprocal disciplinary proceedings were instituted against the respondent in New Jersey. On April 22, 2008, the Supreme Court of New Jersey Disciplinary Review Board adopted the findings of the New York Supreme Court. The New Jersey Disciplinary Review Board evaluated the respondent's misconduct in New York to determine what discipline would be warranted had that misconduct occurred in New Jersey. The New Jersey Disciplinary Review Board suspended the respondent from practice for 1 year.

The Government's Notice of Intent to Discipline brought summary disciplinary proceedings against the respondent based on his suspension and disbarment from the practice of law in New York. After the respondent requested a hearing, the Chief Immigration Judge appointed an Adjudicating Official, an Immigration Judge located in Boston. The Adjudicating Official held a telephonic conference where he set a schedule for filing briefs and exhibits. Neither party objected to the Adjudicating Official deciding the case through the submission of the briefs and exhibits. The Adjudicating Official denied the respondent's motion to change venue. On February 9, 2009, the Adjudicating Official indefinitely suspended the respondent from practice before the Board, the Immigration Courts, and the DHS.

## II. ANALYSIS

For the reasons discussed below, we affirm the Adjudicating Official's February 9, 2009, decision and suspend the respondent from practice before the Board, the Immigration Courts, and the DHS for a period of 7 years, effective April 15, 2008, the date of our immediate suspension order. Under the revised regulations for professional conduct, we review the respondent's appeal pursuant to the standards of review set forth in 8 C.F.R. § 1003.1(d)(3) (2010). *See* 8 C.F.R. § 1003.106(c) (2010) (providing that the Board has jurisdiction to review the decision of the Adjudicating Official and conducts

its review pursuant to 8 C.F.R. § 1003.1(d)(3)); *see also* Professional Conduct for Practitioners—Rules and Procedures, and Representation and Appearances, 73 Fed. Reg. 76,914, 76,926 (Dec. 18, 2008).[1]  Under the regulations, we review findings of fact to determine if they are "clearly erroneous." 8 C.F.R. § 1003.1(d)(3)(i).  We review questions of law, discretion, and judgment and all other issues in appeals de novo.  8 C.F.R. § 1003.1(d)(3)(ii).

The respondent is subject to disciplinary sanctions because he has been suspended and disbarred in the State of New York.  *See* 8 C.F.R § 1003.102(e)(1) (2010) (setting forth the grounds for disciplinary sanctions).  The regulations provide for summary disciplinary proceedings against a practitioner, like the respondent, who has been suspended or disbarred by a State.  *See* 8 C.F.R § 1003.103(b)(2) (2010) (referring to proceedings based on a final order of disbarment or suspension as reciprocal discipline).  Where the EOIR Disciplinary Counsel brings proceedings based on a final order of suspension or disbarment, such an order creates a rebuttable presumption that reciprocal disciplinary sanctions should follow.  *Id.*; *see also Matter of Truong*, 24 I&N Dec. 52, 54 (BIA 2006); *Matter of Ramos*, 23 I&N Dec. 843, 845, 847-48 (BIA 2005); *Matter of Gadda*, 23 I&N Dec. 645, 648 (BIA 2003), *aff'd*, *Gadda v. Ashcroft*, 377 F.3d 934 (9th Cir. 2004).  This presumption can be rebutted only if the attorney demonstrates by clear and convincing evidence that the underlying disciplinary proceeding resulted in a deprivation of due process, that there was "an infirmity of proof" establishing the misconduct, or that discipline would result in "grave injustice."  8 C.F.R § 1003.103(b)(2).

The Attorney General has held that the standard for attorney suspension before the Board "is the same as that for disbarment before the federal courts." *Matter of Bogart*, 15 I&N Dec. 552, 561 (BIA 1975; A.G., BIA 1976). Federal courts considering reciprocal discipline cases "engage[] in a function far different from a court seeking to impose discipline in the first instance. Before imposing reciprocal discipline, a court need only conduct a deferential review of the proceedings that resulted in the initial discipline imposed to satisfy itself that the discipline was not inappropriate under one or more of the [required] factors."  *In re Kramer*, 282 F.3d 721, 725 (9th Cir. 2002); s*ee also In re Sibley*, 564 F.3d 1335, 1339-40 (D.C. Cir. 2009) (stating that

---

[1] Because the respondent filed his Notice of Appeal after the January 20, 2009, effective date of the revisions to the regulations regarding professional conduct, the revised regulations apply to his case.  In citing the revised regulations in this decision, we refer to the 2010 Code of Federal Regulations, in which all regulations in effect as of January 1, 2010, will be codified.  Although they were not yet effective as of the January 1, 2009, update of the Code of Federal Regulations, the revised regulations are available in the 2009 volume of the Code as effective date notes.

reciprocal discipline is appropriate unless the attorney shows that there has been a deprivation of due process, infirmity of proof, or grave injustice, or that the misconduct warrants a substantially different discipline); *In re Oliveras López De Victoria*, 561 F.3d 1, 3–4 (1st Cir. 2009) (stating that a State court's substantive findings "'ordinarily are entitled to a high degree of respect when this court is asked to impose reciprocal discipline'" and that as a general rule, discipline substantially similar to that imposed by the State court will be imposed in a reciprocal proceeding (quoting *In re Williams*, 398 F.3d 116, 118 (1st Cir. 2005))).

We therefore follow a similar deferential approach in cases involving reciprocal discipline. Indeed, we have imposed identical reciprocal discipline against practitioners who have been suspended or disbarred. *See, e.g.*, *Matter of Ramos*, 23 I&N Dec. at 848 (holding that expulsion was the appropriate sanction for an attorney who was disbarred); *Matter of Gadda*, 23 I&N Dec. at 649 (same).

The Adjudicating Official took into account the respondent's claims concerning the New York Grievance Committee and other claimed unfairness relating to his suspension in New York, as well as his defenses against the second disciplinary action in New York, which resulted in disbarment. The respondent was represented by counsel, given hearings, and had the opportunity to appeal. "Notice and an opportunity to be heard [were] clearly not at issue." *Matter of Truong*, 24 I&N Dec. at 54. Therefore, no showing of deprivation of due process has been made. 8 C.F.R § 1003.103(b)(2)(i).

Moreover, there is no merit in the respondent's assertion that there was an infirmity of proof in the second New York proceeding, where he admitted that he could not successfully defend himself and tendered his resignation. As the Adjudicating Official rightly concluded concerning the respondent's disbarment,

> In view of the fact that Respondent resigned from the New York Bar in an affidavit which asserts that he is unable to successfully defend himself in connection with the pending disciplinary proceedings, his critique thereof cannot be material to the defense of the charges brought by [the EOIR Disciplinary Counsel].

The EOIR Disciplinary Counsel argues that if the respondent believes that prosecutorial misconduct caused him to resign from the New York Bar, he should "seek to withdraw that resignation and litigate his disciplinary case in New York." We agree that it is not appropriate to relitigate issues related to the merits of the State disciplinary proceedings in this forum. *See In re Williams*, 398 F.3d at 119 (stating that the purpose of the hearing is not to retry the State disciplinary proceeding); *cf. Matter of Rodriguez-Ruiz*, 22 I&N Dec. 1378, 1379-80 (BIA 2000) (stating that the Board cannot "go behind" a State court order to determine whether it acted in conformity

with State law but must instead accord "full faith and credit" to the court's judgments).

The respondent argued that it would be a "grave injustice" to impose discipline reciprocal to New York because New Jersey imposed a shorter disciplinary period.  The Adjudicating Official rejected this contention and we agree.  There may be many valid reasons why one State would impose a disciplinary period that is different from that of another State.  The fact that one State imposes a different disciplinary period does not constitute a "grave injustice" under the regulation.  *See Matter of Truong*, 24 I&N Dec. at 55 (suspending from practice for 7 years an attorney who was disbarred in New York).[2]

The Adjudicating Official also determined that the hardship claimed by the respondent, including financial burdens relating to his family's medical expenses, do not constitute "grave injustice."  We agree with the Adjudicating Official that "hardship and the difficulties attendant to disbarment do not equate to injustice."  If the financial hardship that accompanies suspension from the practice of law was in itself adequate to establish grave injustice, then almost any attorney whose livelihood was based on his legal practice could avoid similar reciprocal discipline.

Moreover, the respondent submitted appearance forms that failed to properly notify the Immigration Courts of his disbarment and, in so doing, declared falsely under penalty of perjury and intentionally misled the courts.  We agree with the Adjudicating Official that such conduct is clearly inconsistent with any claim for abatement of identical reciprocal discipline.

The respondent has submitted additional exhibits on appeal.  The Board is an appellate body and does not consider new evidence presented on appeal.  *See Matter of Fedorenko*, 19 I&N Dec. 57, 74 (BIA 1984).  Several of the documents were previously available and could have been presented before the Adjudicating Official.  *Cf. Matter of Coelho*, 20 I&N Dec. 464, 471 n.3 (BIA 1992) (referencing the regulations relating to motions to reopen in immigration proceedings).  Other documents relate to the respondent's claim that he should not have been suspended from the practice of law in New York for 2 years and therefore are not relevant.  One exhibit is a March 31, 2009, order of the United States District Court for the District of New Jersey, which temporarily suspends the respondent from the practice of law until further order of the court.  As discussed, the proceedings before the Adjudicating Official do not allow the respondent to relitigate the New York disciplinary proceedings.

---

[2] Although the respondent's suspension in New Jersey will terminate before his disbarment in New York, an attorney must be a member of good standing of a bar and must not be "'under any order of any court suspending . . . him in the practice of law.'"  *Matter of Rosenberg*, 24 I&N Dec. 744, 746 (BIA 2009) (quoting 8 C.F.R. § 1001.1(f) (2008)).

Therefore this order does not relate to the question before us, namely, whether the respondent should be subject to reciprocal discipline similar to that imposed by New York.

The respondent also argues that the Adjudicating Official improperly denied his motion to change venue to New Jersey from Boston, where the respondent claims to lack ties. The venue change request was correctly denied. Under 8 C.F.R. § 1003.106(a)(2)(i), the Chief Immigration Judge appoints an Adjudicating Official. The regulation further provides that "[a]n Immigration Judge shall not serve as the adjudicating official in any case involving a practitioner who regularly appears before him or her." *Id.* Thus, the regulation contemplates that the Adjudicating Official will be appointed from outside a practitioner's geographic location. *See* Executive Office for Immigration Review; Representation and Appearances, 52 Fed. Reg. 24,980, 24,980 (July 2, 1987) (Supplementary Information) (stating that in most cases, an Adjudicating Official will be appointed from outside the location where a respondent practices). In any event, the Adjudicating Official gives "due regard" to the location of a practitioner's practice or residence, as well as the convenience of witnesses. 8 C.F.R. § 1003.106(a)(2)(ii). Had a hearing been necessary in this case, the Adjudicating Official would have considered the proper location to hold such hearing. Instead, the Adjudicating Official decided the case based on the filings of the parties after conducting a prehearing conference by telephone. All indications are that he was a fair adjudicator.

In sum, the appeal of the Adjudicating Official's decision will be dismissed, and the respondent will be suspended from practice for 7 years.[3]

**ORDER:** The respondent's appeal is dismissed, and he is suspended from practice before the Board of Immigration Appeals, the Immigration Courts, and the DHS for a period of 7 years, effective April 15, 2008.

**FURTHER ORDER:** The respondent is instructed to maintain compliance with the directives set forth in our prior order and to notify the Board of any further disciplinary action against him.

**FURTHER ORDER:** The respondent may petition the Board for reinstatement to practice pursuant to the requirements set forth in 8 C.F.R. § 1003.107(b) (2010).

**FURTHER ORDER:** Since the Board previously imposed an immediate suspension order in this case, this order becomes effective immediately pursuant to 8 C.F.R. § 1003.105(d)(2) (2010).

---

[3] Although the Adjudicating Official indefinitely suspended the respondent from practice, we suspend him from practice for 7 years, as requested by the EOIR Disciplinary Counsel. This term is proper because an attorney who has been disbarred in New York may only seek reinstatement after 7 years. *See In re Leonard*, 845 N.Y.S.2d at 226.